UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**, <br><br> v. <br><br> **MATTHEW MARTIN**, <br><br> Defendant. | Case No. 1:21-cr-00394-TNM |

**MEMORANDUM ORDER**

Defendant Matthew Martin faced misdemeanor charges relating to the January 6, 2021, riot at the U.S. Capitol. He was arrested, tried, and acquitted of all charges against him three years ago. Now, Martin moves to expunge the records of his arrest and trial. Because the D.C. Circuit requires evidence of a rights-violation before courts may consider expungement, the Court denies his motion. Martin's request to seal the briefing on this issue also fails, except as to the personally identifiable information in his exhibit.

**I.**

Matthew Martin flew to Washington, D.C., on January 5, 2021, to attend a protest of the presidential election certification the next day. Mot. Expunge, ECF No. 44-1, at 1. He saw President Trump's speech, returned to his hotel for a few hours, then went to the Capitol after it had been breached. Trial Tr., ECF No. 43, at 258–59. He walked through the building with the crowd, wandered across the grounds, then left. Trial Tr. at 258–65. Upon returning home, he informed his employer of his activities in Washington because he had a security clearance. Mot. Expunge, ECF No. 44, at 5. He reports cooperating fully with the FBI during interviews afterward. *Id.* Martin was arrested in June 2021 for his conduct at the Capitol. *Id.* Given the extensive video evidence of his activities, there was never a question about probable cause for

his arrest during or afterward, and Martin has raised none here. *Id.*; Gov't Opp'n Mot. Expunge, ECF No. 46, at 4 (citing the magistrate judge's finding of probable cause).

The Government brought four criminal counts against Martin, including entering a restricted building and disorderly conduct in a Capitol building. Compl., ECF No. 1, at 1. Martin pleaded not guilty. Min. Entry 7/2/2021. After a bench trial, Martin was fully acquitted. Min. Entry 4/6/2022. While his actions were largely undisputed, the Court found the Government had not proved the requisite *scienter,* in large part because a Capitol police officer arguably appeared to allow Martin into the building. He now moves to expunge his criminal records and his FBI background check. Mot. Expunge at 5–9. The Government opposes this relief. Gov't Opp'n Expunge at 1. The motion is ripe for consideration.

## II.

"In the federal courts, the common law bestows upon the public a right of access to public records and documents." *Schilling v. House of Representatives*, 102 F.4th 503, 505 (D.C. Cir. 2024) (cleaned up). Thus transparency, not expungement, is the norm. "[E]xpungement of government records is an equitable remedy that may be available under certain circumstances to vindicate constitutional and statutory rights." *Abdelfattah v. Dep't of Homeland Sec.*, 787 F.3d 524, 537 (D.C. Cir. 2015). "There is no nebulous *right* to expungement of government records that are inaccurate, were illegally obtained, or are prejudicial without serving any proper purpose; instead expungement is a potentially available *remedy* for legally cognizable injuries." *Id.* at 538 (emphasis in original) (cleaned up).

## III.

Martin does not allege a violation of a statutory or constitutional right as required by *Adelfattah*. His motion mentions no imperfection with his arrest or trial. Rather, he has four

other bases for expungement: His record was clean before and after the trial; he was acquitted after a full adjudication on the merits; his case is associated with the "most highly publicized criminal prosecution in the country's history"; and his FBI background check information is "inaccurate and prejudicial without serving any proper purpose." Mot. Expunge at 2–3.[1] Martin also says that he was fired immediately after being charged in this case because of his public association with the January 6th events. *Id.* at 5–6. But his reply brief indicates that he is not requesting expungement for employment reasons. Reply Mot. Expunge, ECF No. 47-1, at 1.

None of Martin's reasons satisfy *Abdelfattah*. The expungement remedy must right a statutory or constitutional wrong. Martin's filings rest on older cases that have been refined and narrowed by *Abdelfattah*. So those cases do not entitle him to expunging his arrest and trial acquittal records based on an equitable balancing test that considers whether he has been "stigmatized unfairly." Mot. Expunge at 9. Indeed, outside the D.C. Circuit, most circuits have concluded that district courts do not even have ancillary jurisdiction to "hear requests for equitable expungement." *United States v. Wahi*, 850 F.3d 296, 298 (7th Cir. 2017) (collecting cases).[2] Instead, defendants in other circuits must use *coram nobis* or similar filings to obtain

---

[1] Martin concedes that even though his FBI background check used to omit his acquittal, the acquittal now shows up. Mot. Expunge at 6–7; Mot. Expunge Ex. B, ECF No. 44-1, at 20.

[2] The appellate consensus rests on the Supreme Court's holding in *Kokkonen v. Guardian Life Ins.*, 511 U.S. 375, 438–39 (1994). *See Wahi*, 850 F.3d at 298. *Kokkonen* "clarified that ancillary jurisdiction exists for two limited purposes: (1) to permit claims that are factually interdependent to be resolved in a single proceeding; and (2) to enable the court to manage its proceedings, vindicate its authority, and effectuate its decrees." *Wahi*, 850 F.3d at 298 (cleaned up); *Kokkonen*, 511 U.S. at 438–39. Most circuits have concluded that these two buckets do not include equitable expungement. *Wahi*, 850 F.3d at 298 (collecting cases); *United States v. Mettetal*, 714 Fed. App'x 230, 234–35 (4th Cir. 2017); *but see United States v. Trzaska*, 781 Fed. App'x 697, 703 (10th Cir. 2019) (authorizing equitable criminal record expungement for records "relating to acquittals or dismissals of charges"). *Abdelfattah* does not cite *Kokkonen*, and its holding assumes jurisdiction over equitable expungement. *Abdelfattah*, 787 F.3d at 536–37. The circuit consensus generally comes to a similar practical outcome though it rests on jurisdictional principles rather than *Abdelfattah*'s remedial principles. *See United States v. Field*, 756 F.3d 911, 915–16 (6th Cir. 2014) ("We share the view of our sister circuits that, post *Kokkonen*, federal courts lack ancillary jurisdiction over motions for expungement based on purely equitable considerations, yet retain ancillary jurisdiction over motions challenging an unconstitutional conviction [and arrest]."); *but see Wahi*, 850 F.3d at 300 (discussing expungement only when a statute explicitly authorizes the remedy).

3

this post-conviction civil remedy. *See, e.g.*, *United States v. Crowell*, 374 F.3d 790, 796 (9th Cir. 2004).

Martin's argument misses that *Abdelfattah* has narrowed older D.C. Circuit precedent. He appeals to *Chastain v. Kelley*, 510 F.2d 1232 (D.C. Cir. 1975) and its progeny, *Doe v. Webster*, 606 F.2d 1226, 1230–31 (D.C. Cir. 1979), and *Livingston v. Department of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). Together, he argues that these cases establish a "right not to be adversely affected" by government records when their information is "inaccurate," "acquired by fatally flawed procedures," or "prejudicial without serving any proper purpose." *Chastain*, 510 F.2d at 1236. To protect this right, he says, "courts have ordered expungement of arrest records in the exercise of their inherent equitable powers." *Webster*, 606 F.2d at 1230. They can do so when a case involves "a lack of probable cause coupled with special circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Id*.

His case falls into the "unusual and extraordinary circumstances" bucket, he insists, because the January 6th media coverage has been uniquely pervasive and unusually prejudicial, associating him with violence of which he was acquitted. Mot. Expunge at 10–12. But forty years after *Chastain*, *Abdelfattah* explicitly rejected Martin's interpretation of *Chastain* and its progeny. "Admittedly, our use of the word 'right' in describing the conditions under which the remedy of expungement would be appropriate could be a source of confusion." *Abdelfattah*, 787 F.3d at 537 (referring to *Chastain*, 510 F.2d at 1236). But "[t]here is no indication in *Chastain* that we were recognizing a distinct legal right to expungement of government records." *Id.* This conclusion followed from the principle that "[a] court does not fashion equitable remedies without first finding a violation of an established legal right has occurred or is imminent." *Id.* at

4

536–37 (quoting Black's Law Dictionary (10th ed. 2014)) (defining a remedy as "the means of enforcing a right or preventing or redressing a wrong").

Under current Circuit precedent, "reading *Chastain* both for what it says and what it does not say, the case establishes a modest proposition: expungement of government records is an equitable *remedy* that may be available under certain circumstances to vindicate constitutional and statutory rights." *Id.* (emphasis added).[3]  In sum, then, after a statutory or constitutional violation, a district court judge may exercise his inherent equitable discretion to grant the expungement remedy.  Inaccuracy, illegal government action, and prejudice could be exemplars to guide such discretion.  But any "[b]alancing of the equities" occurs only to narrow the universe of circumstances that qualify for an expungement, not to pave an alternative path to expungement around the threshold statutory or constitutional affront.  *Livingston*, 759 F.2d at 78.

The D.C. Circuit also has stated that *Abdelfattah*, which on its face applies to "government records," specifically applies in the criminal context.  *See United States v. Scantlebury*, 921 F.3d 241, 250 (D.C. Cir. 2019).  *Scantlebury* teaches that if the appellants had sought expungement of their dismissed indictments and arrest records, *Abdelfattah* would have provided the proper framework to analyze the question.  921 F.3d at 250.  But, like the *Scantlebury* appellants, Martin "ha[s] made no attempt to satisfy this standard."  *Id.*  He has only argued that he should win expungement because he has been "stigmatized unfairly."  Reply Mot.

---

[3] Though *Abdelfattah* does not specifically cite *Livingston* or *Webster*, these two cases rely on *Chastain*, and *Abdelfattah*'s reasoning follows theirs.  *See Livingston*, 759 F.2d at 78 (suggesting that there may have been an improper charge and transferring the case to a district court out-of-circuit for a "balancing of the equities"); *Webster*, 606 F.2d at 324 (resting reasoning on a statute, as described in *Livingston*, 759 F.2d at 78); *id.* at 323 n.11 (listing cases discussing statutory or constitutional violations).  Martin also cites *Menard v. Saxbe*, 498 F.2d 1017, 1023 (D.C. Cir. 1974), which is of a piece with the rest of *Chastain*-era precedent.  It states that the remedy of expungement "exists to vindicate substantial rights provided by statute."  *Id.*

Expunge at 2–3. This nebulous harm identifies no statutory or constitutional violation that this Court can remedy.

Even if the Court were to consider the looser *Livingston* and *Webster* formulation—whether Martin's case is an "extraordinary and unusual" circumstance meriting expungement without a statutory or constitutional violation—Martin would have a steep hill to climb. He relies on *Livingston* for the proposition that expungement "is appropriate when an individual could be stigmatized unfairly." Reply Mot. Expunge at 2–3. But *Livingston* suggested that the Government had an interest in recordkeeping even when trials have been acquitted on a "technical ground." *Livingston*, 759 F.2d at 79 n.33 (cleaned up). And even the Tenth Circuit, which also allows equitable expungement of acquitted or dismissed charges, says that "the fact that [the defendant] was acquitted" is not "in itself sufficient" to warrant expungement of an arrest record. *United States v. Trzaska*, 781 Fed. App'x 697, 703 (10th Cir. 2019). The balancing inquiry would be a difficult one while Martin's main argument rests on acquittal.

Martin claims four more interests that could weigh in his favor, but none persuade. First, he says that his clean record before and after the trial warrants expungement. Mot. Expunge at 10. But he cites no authority for this proposition. *Id.* And the Second Circuit has rejected a similar argument that a sympathetic defendant, there a single mother with no prior criminal history, merits expungement. *See Doe v. United States*, 833 F.3d 192, 195 (2d Cir. 2016).

Second, he says that the media coverage of January 6th has been "unprecedented," ensuring he is "tarred by that brush" of guilty verdicts for almost all other defendants involved. Mot. Expunge at 10–11. But this argument likely cuts against him; the Court can do nothing about the extensive media coverage that will survive beyond any expungement, nor does he ask it to. More, the extensive coverage of his trial also prominently discusses his *acquittal*,

6

minimizing the harm he faces and the effect of any expungement. *See, e.g.*, Scott MacFarlane, Robert Legare & Caroline Linton, *Matthew Martin Becomes First January 6 Defendant to be Found Not Guilty on All Charges*, CBS News (Apr. 6, 2022).[4] He has already been vindicated in the court of public opinion.

Third, Martin argues that his FBI background check information is "inaccurate and prejudicial without serving any proper purpose" because it lists his charges as "Riot—Engaging In," though those words do not appear in the statutes he was charged with violating. Mot. Expunge Reply at 2–3; Mot Expunge at 6–7; Compl. at 1. Even if these words incorrectly describe his conduct, *Abdelfattah* makes clear that blatant inaccuracy does not create a "standalone right to expungement" absent a statutory or constitutional injury. 787 F.3d at 536.

Fourth and finally, Martin argued in his initial brief that he was frustrated with employers reviewing his tainted FBI background check, though he disclaims this issue in his reply. Mot. Expunge at 11; Reply Mot. Expunge at 1–2. Courts in this district have repeatedly rejected employment-related arguments when considering expungement. *E.g.*, *United States v. Woods*, 313 F. Supp. 3d 197, 199–201 (D.D.C. 2018) (collecting cases). And recall that his rap sheet now notes his acquittal, ameliorating the sting of his third and fourth complaints. *See supra* note 1.

In sum, Martin has not attempted to show a statutory or constitutional violation during his arrest, trial, or conviction. So this Court has no violation on which to rest the equitable remedy of expungement. His motion is denied.

---

[4] https://www.cbsnews.com/news/matthew-martin-january-6-defendant-not-guilty/.

7

## IV.

Finally, Martin requests sealing the briefing and exhibits in support of his motion for expungement.  Mot. Leave File Under Seal, ECF No. 44, at 1–2.  The Court does not find that the required *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980), factors favor sealing the briefing, but they do favor sealing his FBI background check.  *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665–66 (D.C. Cir. 2017) (listing the *Hubbard* factors).  The six factors are "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Id.*

Martin argues that filing his expungement briefing publicly will "serve to draw more attention to Mr. Martin and defeat the purpose of the expungement motion."  Mot. Leave to File Under Seal at 1–2.  But given the extensive media coverage already of the trial, acquittal, and most of the facts contained in the briefing (although not the briefing itself), this argument is unconvincing.  Trial Trs., ECF Nos. 40–43; *see supra* Section III.  So two of the *Hubbard* factors fail at the outset:  Martin has little property or privacy interest in the briefing and there is little possibility of prejudice from unsealing them.  *Metlife*, 865 F.3d at 665–66.  The main nonpublic information, details about Martin's post-trial employment history, he disclaims as irrelevant to his motion.  Reply Mot. Expunge at 1.

Moving to the other *Hubbard* factors:  The public deserves access to the documents at issue because this case was one of considerable public interest; though the public has not previously accessed these motions, it already had access to most information in these motions

through the public trial and reporting. The Court assumes the final two factors weigh in favor of sealing, although not significantly. Accordingly, four of the six *Hubbard* factors favor unsealing these motions. In light of the default presumption against sealing, the minimal additional burden to Martin in having these documents public, and all of the *Hubbard* factors, Martin's motion for leave to file under seal is denied as to his briefing.

But the Court will grant Martin's motion for leave to file his FBI background check under seal. This document contains personally identifiable information. Mot. Expunge at 13–20. This information was not previously available to the public, is not a topic of public interest, and has a stronger privacy right attached. *Metlife*, 865 F.3d at 665–66. It is currently included as part of his briefing. *See* Mot. Expunge, ECF No. 44-1. Martin will be directed to re-file his Motion for Expungement with the FBI background check redacted as appropriate.

## V.

For the forgoing reasons, Martin has not shown that his case merits the equitable remedy of expungement. He also has not established that the briefing in support of his motion for expungement merits sealing. It is hereby,

**ORDERED** that Defendant's [44-1] Motion to Expunge Record is **DENIED**. It is also

**ORDERED** that Defendant's [44, 47] Motions for Leave to File Under Seal are **DENIED**. Martin is directed to file a redacted version of his motion for filing on the public docket within 14 days. The Court will pause unsealing of the related motion until then to allow Martin to file a properly redacted version.

**SO ORDERED.**

Dated: July 18, 2025                                          TREVOR N. McFADDEN, U.S.D.J.